UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIBERTY MUTUAL FIRE INSURANCE CO.,

        Plaintiff,

v.

        Case No. 10-cv-10757-TLL-CEB
        Honorable Thomas L. Ludington

KYLE MICHAEL BEACH, CHARLES KURT
BEACH, DANIEL REISS, AND JUDITH REISS
as NEXT FRIEND of SDR, VR, and NR, minors,

        Defendants.
_____/

## OPINION AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On February 24, 2010, Liberty Mutual Fire Insurance Company ("Plaintiff" or "Liberty Mutual") filed a complaint against Kyle Michael Beach, Charles Kurt Beach, Daniel Reiss, and Judith Reiss as next friend of SDR, VR, and NR, minors (collectively, the "Minor Children"), for declaratory judgment [Dkt. #1]. Liberty Mutual seeks a declaratory determination that its obligation to indemnify its insureds under a policy purchased by Charles Beach for his liability to third parties is limited to a $100,000 per person for damages arising out of a automobile/motorcycle accident (the "Accident") that occurred on September 3, 2007.

Now before the Court is Plaintiff's motion for summary judgment [Dkt. # 18], filed on June 14, 2010. Liberty Mutual contends that the policy limits for third party claims for bodily injury by any one person in any one auto accident is $100,000 per person and $300,000 per accident. They further contend that only one person, Daniel Reiss, sustained bodily injury in the Accident. Liberty Mutual asserts that Daniel Reiss' children's claims against Kyle Beach, the driver of the vehicle, and Charles Beach, the owner of the vehicle, derive from their father's physical injury in the accident

and are thus subject to the policy limits applicable to their father. Consequently, Liberty Mutual contends its limit of liability for damages for which the insureds are legally responsible because of the Accident is $100,000. Neither Kyle Beach nor Charles Beach, Liberty Mutual's insureds, filed an answer to Plaintiff's complaint. Defendant Daniel Reiss filed a response on June 30, 2010 [Dkt. # 21] and Defendant Judith Reiss, however, filed a response on July 2, 2010 [Dkt. # 22]. Both Daniel Reiss and Judith Reiss assert that the $300,000 per accident is the appropriate limit of liability because Daniel Reiss' three minor children have separate and independent claims against the insureds for damages resulting from their father's injuries. Plaintiff filed its reply on July 26, 2010 [Dkt. # 24].

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the Court will **GRANT** Plaintiff's motion for summary judgment.

I

On September 3, 2007, Defendant Daniel Reiss was involved in a motorcycle/automobile accident with Defendant Kyle Beach and his twin brother, Kurt. The accident occurred at approximately 7:58 p.m. at the intersection of Court Street and North Charles Street in Saginaw, Michigan. Earlier that day, Kyle and Kurt Beach, then 20 years old, left their parents home in Saginaw to travel to a wooded lot in the Hemlock area and deliver firewood to a customer in St. Charles as a part of their side business of selling firewood. Kyle was driving a Chevrolet Blazer, which was titled in his father's, Charles Beach's, name. After delivering the firewood in St. Charles

and approximately two hours before the accident, Kyle and Kurt drove to the Marathon Fast Pax Food Store ("Marathon Store") in St. Charles. Kyle, a minor, entered the Marathon Store and purchased beer. Kyle later stated at his deposition that he had purchased beer at the same store as many as ten time before that day. The beer was consumed as Kyle drove from St. Charles to Murin Company, Kyle and Kurt's place of employment, to return the trailer they borrowed to haul the firewood. Kyle drank the majority of the beer and had not previously drank that quantity of beer while driving. All of the beer was consumed before the accident and the containers were discarded.

While driving from Murin Company to his parents' home in Saginaw, Kyle arrived at Court Street and attempted to make a left-hand turn from Court Street onto North Charles Street. At the intersection, Kyle swerved suddenly into the left lane, striking Daniel Reiss head on. Daniel Reiss was driving a 2003 Harley Davidson. An eyewitness testified that for approximately three miles before the crash, Kyle was speeding, swerving in and out of traffic, and driving carelessly. The eyewitness further testified that it looked like the motorcycle exploded and Daniel Reiss went up in the air, with a second witness testifying that he went approximately twenty-five feet in the air before landing. Daniel Reiss sustained multiple injuries, including: a comminuted right distal radius fracture; Type III A open comminuted left distal radius and ulnar fracture; high energy left pertrochanteric femur fracture; Right zone 1 sacral fracture; comminuted bilateral pubic ramus fracture; head injury; urologic injury and herniation; pain and suffering, mental anguish and emotional distress. Daniel Reiss underwent extensive medical care and treatment as a result of his injuries.

Daniel Reiss filed a civil action in the Saginaw County Circuit Court against Kyle Beach, Charles Beach, Paxson Oil Company d/b/a Fast Pax Food Stores, and Citizens Insurance for

damages resulting from his injuries. Daniel Reiss' three Minor Children, represented by their mother and Daniel Reiss' ex-wife Judith Reiss, subsequently filed a separate action in the Saginaw County Circuit Court alleging negligence and ownership liability against Kyle Beach and Charles Beach, and a claim against Paxson Oil Company under Michigan's Dram Shop Act (the "Judith Reiss Lawsuit"). Both lawsuits were later assigned to the Midland County Circuit Court due to the recusal of each of the judges of the Saginaw County Circuit Court Bench.

The parties agreed to a special case evaluation panel, which rendered separate damage amounts against Kyle Beach and Charles Beach of $400,000 in favor of Daniel Reiss and $20,000 for each of the three Minor Children. Daniel Reiss' claim against Paxson Oil Company resolved through case evaluation in the amount of $1,750,000. The claims of the three children against Paxson Oil Company settled as a result of the case evaluation in the additional amount of $80,000 per child. Case evaluation was unsuccessful as to Kyle Beach and Charles Beach.

Following the case evaluation, Liberty Mutual, which was not a party to the state court litigation, refused to offer its $100,000 policy limit in settlement of only Daniel Reiss' claim. Liberty Mutual contended that the $100,000 per person limit for bodily injury was the total amount of available coverage to Charles and Kyle Beach for any injured person and that the Minor Children's claims for derivative injury are also so limited. Daniel Reiss, who it is worth noting is not an insured or a party to the insurance agreement, alleges that this was the first time Liberty Mutual "took [this] position." Daniel Reiss Resp. to Pl.'s Mot. for Summ. J. 9.

In the state court action, then-Plaintiff Daniel Reiss' motion for summary judgment against Kyle Beach and Charles Beach was granted by Midland County Circuit Court Judge Michael J. Beale. As a result, the issues of liability, causation, comparative negligence, and the no-fault

threshold of Daniel Reiss' serious impairment of body function and permanent serious disfigurement as to Kyle Beach and Charles Beach, Paxson Oil Company, and Citizens Insurance Company of the Midwest were resolved. Paxson Oil Company subsequently resolved the case, and Citizens Insurance Company was later dismissed through a stipulated order. The only issue to be determined in the instant action for declaratory judgment is the amount of Liberty Mutual's indemnity obligation to its insureds, Kyle Beach and Charles Beach.

II

The Limit of Liability provision in Charles Beach's Liberty Mutual Fire Insurance Company Auto Policy ("the Auto Policy") provides:

> The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

Charles Beach and Kyle Beach are listed as two of the covered drivers under the Auto Policy. The relevant insurance policy period was from July 27, 2007 through July 28, 2008.

III

Insurance contract construction principles are well-settled under Michigan law, and courts are to examine the policy as a whole and enforce it in accordance with its terms. *See, e.g.*, *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1278 (6th Cir. 1997)*; Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207 (1991). Insurance companies may also limit the risks they are willing to assume, and adjust its premiums accordingly. *See Ill. Employers Ins. of Wasau v. Dragovich*, 139 Mich. App. 502, 507 (1984). When presented with a dispute, a court must determine what the parties' agreement is and enforce it. *Fragner v. Am. Comm. Ins.*, 199 Mich.

App. 537, 541 (1993). First, the court must determine whether the agreement is clear and unambiguous on its face. *Group Ins. Co. v. Czopek*, 440 Mich. 590, 595 (1992). If an ambiguity exists, the policy must be construed in favor of the insured. *Powers v. DAIIE*, 427 Mich. 602, 624 (1986). If no ambiguity is found, the court will uphold the clear meaning of the insurance contract that does not violate public policy. *Vanguard Ins. Co. v. Clark*, 438 Mich. 463 (1991).

Liberty Mutual argues that its Auto Policy limit of liability provision, provided in relevant part above, is clear and that the damages alleged in the Judith Reiss Lawsuit are included in the "per person" limit of liability of $100,000. Liberty Mutual asserts the relevant provision plainly states that the "per person" limit of liability is the maximum amount payable for all damages arising out of bodily injury sustained "by any one person in any one auto accident." Daniel Reiss was the only person who sustained bodily injury in the Accident. This fact is undisputed. Furthermore, Liberty Mutual asserts that the Defendant minors were not in the accident, and thus could not have sustained bodily injury "in" the accident.

To support its interpretation of the Auto Policy provision language, Liberty Mutual contends that Michigan courts have repeatedly applied the same interpretation to the same or similar language as found in the instant Policy, with all damages claims, direct and consequential, resulting from injury to one person being subject to the "per person" limitation. *State Farm v. Descheemaeker*, 178 Mich. App. 729, 732-33 (1983); *see also Gibbs v. Armvoit*, 182 Mich. App. 425 (1990); *Auto Club v. Lanyon*, 142 Mich. App. 108 (1981). Liberty Mutual advances *State Farm v. Descheemaeker* as being directly on point. In *Descheemaeker*, the insured, Carolyn Fliger, was involved in an automobile accident with John Descheemaeker who sustained serious physical injuries. 178 Mich. App. at 730. Fliger's insurance policy provided liability coverage for bodily injury of $25,000 per person and $50,000 per accident. *Id.* Descheemaeker filed suit against Fliger for his physical

injuries, and his wife and children sought derivative damages for loss of consortium, society, and companionship. *Id.* at 730-31. The parties agreed that Descheemaeker's damages alone exceeded $25,000 and that the damages to his wife and children also exceeded $25,000. *Id.* The claims against Fliger were settled by payment of the undisputed $25,000 policy limit to a single individual, Descheemaeker, with the second $25,000 left to the outcome of State Farm's declaratory judgment action. *Id.* The Michigan Court of Appeals agreed with the trial court's decision in favor of State Farm, finding that defendants were not entitled to the second $25,000. *Id.* The court reasoned that the liability policy limit of $50,000 for "each accident" resulting in bodily injury did not apply unless two or more persons sustained bodily injury in the same accident. *Id.* The court defined "bodily injury" as meaning "bodily injury to a person and sickness, disease or death which results from it," stating that this definition has been found to be unambiguous and understood as contemplating "actual physical harm or damage to a human body". *Id.* (citing *Nat'l Ben Franklin Ins. Co. of Mich. v. Harris*, 161 Mich. App. 86, 89 (1987); *Farm Bureau Mut. Ins. Co. of Mich. v. Hoag*, 136 Mich. App. 326, 334-35 (1984)).

Additionally, the court noted that "[n]on-physical injuries, such as humiliation and mental anguish that lack any physical manifestations do not constitute "bodily injury," and it follows that other nonphysical injuries, such as a loss of consortium, society, and companionship, are also not bodily injuries. *Id.* As a result, the second $25,000 policy limit did not apply to derivative claims asserted by accident victim's family members. *Id.* at 730. The court emphasized that even if the claims made by the wife and children did meet the minimal requirement of physical manifestation, the policy limit of $25,000 per person would preclude their recovery because their damages would still be derivative in nature to John Descheemaeker's bodily injury. *Id.* at 732. The court reasoned that when a policy fixes a maximum recovery for "bodily" injury to one person, it has generally been

held that the limitation is applicable to all claims of damages flowing from the bodily injury, even if part of the damages are claimed by someone other than the person suffering the bodily injury in the accident. *Id.* at 732-33. Stated otherwise, "*all damage claims, direct and consequential, resulting from injury to one person, are subject to the limitation*." *Id.* (emphasis added).

Relying on this decision, Liberty Mutual notes that the Judith Reiss Lawsuit alleges that the Minor Children suffered "economic and non-economic losses, including mental anguish, pain and suffering, emotional distress, fright, shock, humiliation and embarrassment, and loss of consortium" *as a result of their father's injuries*. Judith Reiss Compl. ¶ 33 (emphasis added). As was the case in *Descheemaeker*, Liberty Mutual argues that its policy adds language which further reinforces the scope of the limit of liability provision by expressly stating that bodily injury must be sustained *in* the accident. As a result, the Minor Children's alleged damages claims are derivative of Daniel Reiss' injuries and thus included in the $100,000 per person limit. Liberty Mutual emphasizes that the Judith Reiss Lawsuit acknowledges that the claims are derivative in nature, as it alleges that the Minor Children suffered losses "as a result of their father, Daniel Reiss' injuries." Judith Reiss Compl. ¶ 33.

Liberty Mutual contends that although the Michigan Supreme Court has recognized that a child can maintain a separate and independent claim for loss of parental society and companionship under *Berger v. Weber*, 411 Mich. 1 (1981), this argument was rejected as applied to insurance policy limits in *Auto Club v. Lanyon*, 142 Mich. App. 108 (1981). In *Lanyon*, the court concluded that the child's claims of loss of society and companionship were, in fact, derivative claims and the child was not entitled to separate and independent limits despite the holding in *Berger*. *Id.* at 111-12. The court reasoned that the bodily injury sustained by one person in any one occurrence included "all injuries and damages sustained by others as a consequence of that bodily injury." *Id.*

As a result, the child's claim for loss of society and companionship did not entitle her to a separate claim for bodily injury which would increase the policy's limitations. *Id.* Liberty Mutual argues this same reasoning applies in the instant case, and the $100,000 policy limit of liability for bodily injury should encompass the derivative claims made by Daniel Reiss' Minor Children because Daniel Reiss was the only person who sustained bodily injury in the accident.

By contrast, Daniel Reiss relies on language from the Dram Shop Act, MCL 436.1801, that provides for a spouse, child, parent or guardian of the injured individual to have a right of action in his or her own name to support the argument that his children's claims are not derivative of his claims. Relying on this statute, Daniel Reiss argues that the Dram Shop Act requires that the children bring their own lawsuit against Liberty Mutual's insureds in order to prosecute their "right(s) of action in his or her own name." MCL 436.1801(3). Likewise, the Judith Reiss Lawsuit alleges violations of the Dram Shop Act by Kyle Beach and Charles Beach. However, such an argument does not apply to the instant action, not only because it is unrelated to the insuring provisions of the policy but also because neither Kyle Beach nor Charles Beach were a person or retail licensee who *furnished* the alcohol that contributed to the intoxication of the person causing the injury. Instead, the claims at hand sound in common law negligence. Daniel Reiss' Dram Shop Act arguments are briefly included to discuss and distinguish the relevant facts from the main case upon which Daniel Reiss relies, *Auto Club Ins. Ass'n v. Hardiman*.

Daniel Reiss argues that *Auto Club Ins. Ass'n v. Hardiman*, 228 Mich. App. 470 (1998), is the most appropriate authority in the instant case, and rejects the arguments raised by Liberty Mutual. In *Hardiman*, a six year old child witnessed an accident in which her pedestrian brother was struck by an automobile, rendering him a paraplegic. *Id.* at 472. The ACIA automobile policy provided liability coverage of $100,000 per person and $300,000 per occurrence for bodily injury,

and provided that the limit "per person" was the maximum that would be paid for bodily injury sustained by one person in one occurrence, including all claims for derivative damages allowed under the law. Daniel Reiss correctly asserts that this is similar to the language in the Liberty Mutual policy, although it should be noted that the Hardiman policy limit was for one person in one *occurrence* and the Liberty Mutual policy limit is for "one person in any one *auto accident.*" Furthermore, the insurance company in *Hardiman* similarly argued that the child's claims were derivative of her brother's claims and subject to the $100,000 per person limitation, inclusive of all claims for derivative damages. *Id.* The child's representative maintained that the $300,000 per occurrence limitation was available to the child because her claim involved a separate, independent cause of action that was not derivative of her brother's claims. *Id.* The court of appeals affirmed the trial court's finding that the child's claim was subject to the "per occurrence" as opposed to the "per person" coverage limit because the child's claim for intentional infliction of emotional distress was made on her own behalf, for her own injuries, for a tort directed at her rather than at her brother. *Id.* at 473. The court further stated that the claim for negligent infliction of emotional distress involved a separate, independent cause of action, seeking recovery for a tort directed at the child personally which was not contingent on any recovery by her brother. *Id.*

Daniel Reiss contends that in the case at bar, the claims of the Minor Children are separate, independent statutory causes of action seeking recovery for their own damages, and not for the damages of their father. Relying on *Berger v. Weber*, *supra*, Daniel Reiss also alleges that the Michigan Supreme Court has recognized a child's independent right of action under the Dram Shop Act for loss of parental society and companionship where the child's parent is negligently injured, noting that the success of the child's claim is not contingent on any recovery under the statute or common law. As a result, Daniel Reiss asserts that his children's claims against the automobile

-10-

owner and operator are not derivative and therefore not subject to the $100,000 per person limit under the Policy. Furthermore, Daniel Reiss notes that in *Hardiman*, the ACIA cited the same three cases in support of its argument that Liberty Mutual now argues apply to the instant case. The *Hardiman* court concluded that the ACIA's reliance on the cases was misplaced, finding that they all involved claims by family members for loss of consortium, society, and companionship, and none involved a claim of intentional or negligent infliction of emotional distress. 228 Mich. App. at 474.

Daniel Reiss argues that Liberty Mutual's reliance on this reasoning is similarly misplaced because his children's claims are separate, independent statutory claims under the Dram Shop Act. Daniel Reiss emphasizes that Section 5 of the Dram Shop Act provides that an action under the Act against a retail licensee shall not be commenced unless the minor or alleged intoxicated person is a named defendant in the action, and is retained in the action until the litigation is concluded by trial or settlement.

Daniel Reiss' assertion that the holding in *Hardiman* and the language in Section 5 of the Dram Shop Act are applicable is incorrect. Section 3 of the Dram Shop Act provides

> Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the *unlawful sale* is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name *against the person who by selling, giving, or furnishing the alcoholic liquor* has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death.

MCL 436.1801(3) (emphasis added). As noted above, a Dram Shop Act claim is properly brought against the party who provided alcohol to a minor or intoxicated person, where the unlawful sale is a proximate cause of the injury. Under Section 5 it is required that the minor or intoxicated

-11-

person be an identified plaintiff in the case. They are not, by statute, required to be a defendant because of his or her potential liability under the Dram Shop Act. Neither Kyle Beach nor Charles Beach unlawfully sold, gave, or furnished alcohol in the case at hand as is required by the Dram Shop Act. Alternatively, the Minor Children's claims against Kyle Beach and Charles Beach sound in negligence and are common law claims, not statutory Dram Shop Act claims.

Additionally, the child in *Hardiman* was an eyewitness to an accident that rendered her brother a paraplegic, with the court concluding that the cause of action for negligent infliction of emotional distress by the minor bystander–a person within the zone of danger at the accident–was not derivative. The court expressly noted the limited aspect of its decision, stating that it was "presented with the single narrow legal issue of whether defendant's bystander claim of negligent infliction of emotional distress is derivative of [her brother's] negligence claim, such that it is subject to the same $100,000 a person limit of coverage as her brother's claim." *Hardiman*, 228 Mich. App. at 473. The court also distinguished the minor's claim from derivative injury claims, finding that "[u]nlike the loss of consortium claim, an injury the bystander suffers is not one that results from an injury to another person. Rather, the injury is *directly to the bystander* as a result of the bystander *seeing* the accident and *reasonably* believing that the direct victim of the accident would be seriously injured or killed . . . ." *Id.* at 476 (emphasis in the original). Here, the minor children were not eyewitnesses to the accident, and, as stated by Daniel Reiss, fortunately not even present at the time of the accident. As noted above, Judith Reiss states that the injuries to the minor children were "as a result of their father, Daniel Reiss' injuries." Judith Reiss Compl. ¶ 33. Such injuries, using language from the *Hardiman* opinion, "result[ed] from an injury to another person."

In Defendant Judith Reiss' response, she notes that Liberty Mutual relies on a series of decisions from the Michigan Court of Appeals in support of the relief sought in its motion, all of

which were issued prior to November 1, 1990. Judith Reiss asserts that these decisions are not authoritative precedent pursuant to MCR 7.215(J)(1). Judith Reiss offers *Hardiman* as controlling precedent after November 1, 1990, and asserts that it has not been reversed or modified. However, as noted above, *Hardiman* is distinguishable on the facts because the Minor Children's claims are based on their father's injuries. While the decisions cited by Plaintiff may lack precedential force, the reasoning of the cases is sound and not inconsistent with any known published precedent. Because the cases offered by Liberty Mutual present similar and useful factual comparisons, as well as guidance on areas of applicable law that are not inconsistent with any known published precedent, the authority presented by Liberty Mutual is, at a minimum, highly persuasive.

The Minor Children's claims against Kyle Beach and Charles Beach do not arise under liability imposed by the Dram Shop Act and do derive from their father's injuries. Plaintiff's motion for summary judgment will be granted because the applicable policy limit of liability for bodily injury resulting from the Accident is the "per person" limit of $100,000 for all damages claims made by Daniel Reiss and the Minor Children for damages arising out of the Accident.

IV

Daniel Reiss also challenges the interpretation of the Beach's policy in his response. He asserts that the children did suffer "bodily injury" within the meaning of the policy, which states that "bodily injury" means "bodily harm, sickness or disease that results." Daniel Reiss emphasizes that the policy does not define the meaning **"**bodily harm, sickness or disease." The mere fact that a term is not defined in a policy does not render that term ambiguous. *Henderson v. State Farm Fire and Cas. Co.*, 460 Mich. 348, 354 (1999). In such an instance, the reviewing court must interpret the terms of the contract in accordance with their commonly used meanings. *Id.* Daniel Reiss asserts that in determining the common use of a term or phrase, use of a dictionary is appropriate. *Stanton*

*v. City of Battle Creek*, 466 Mich. 611, 617 (2002) (interpreting the phrase "motor vehicle" under the Michigan Vehicle Code). Relying on Webster's New World Dictionary (3rd College Edition), Daniel Reiss offers the meaning of "sick" as including "deeply disturbed or distressed; extremely upset, as by grief, disappointment, disgust, fear, etc."; "in poor condition; impaired; unsound"; and "mentally ill or emotionally disturbed." He also asserts that the definition of "disease" includes "any departure from health; illness in general"; and "any harmful or destructive condition" and the definition of "harm" includes "hurt; injury; damage."

Daniel Reiss argues that when the common, ordinary meaning of the language used in the Auto Policy are read in the context of his Minor Children's claims, it cannot be reasonably argued that the children did not suffer "bodily injury," and that even if the Court accepts Liberty Mutual's argument that there must be a "physical manifestation" then it gives rise to a genuine issue of material fact because no discovery has been conducted regarding the children's injuries. However, as noted above, even if the children did have a physical manifestation, the $100,000 policy limit would preclude their recovery because their damages would still be derivative in nature to their father's bodily injury. *See Descheemaeker*, 178 Mich. App. at 732.

Daniel Reiss argues that Liberty Mutual's argument that because the children were not physically "in the accident" they could not have sustained "bodily injury" is novel and should be rejected pursuant to *Hardiman*. Daniel Reiss highlights that the language in the insurance contract in *Hardiman* essentially mirrors the language in the Auto Policy. As discussed above, the alleged injuries in the instant case are distinguishable from the injuries of the child in *Hardiman*. Furthermore, Daniel Reiss contends that although his children did not witness the accident itself as did the minor child in *Hardiman*, they have witnessed and continue to witness the disabling and disfiguring injury to their father, resulting in harm, sickness and damages to the Minor Children.

Daniel argues that the children should not be penalized and denied coverage determined to be available to the child in *Hardiman* because they were not "in" the accident. He further asserts that the definition of the word "in" includes: "affected by"; "with regard to" and "as concerns," Webster's Dictionary, *supra*, and that Liberty Mutual's restrictive definition requiring actual physical involvement should be rejected. Daniel emphasizes that the principle of requiring a child to be physically "in" the accident was rejected in *Hardiman* as the child in *Hardiman* was in the zone of danger and suffered her own, personal injuries as a result of the accident which were wholly independent of those caused to her brother. The Minor Children in this case by contrast do not have claims wholly independent of their father's injuries, but instead only have claims that are admittedly derivative of their father's. *See* Judith Reiss Compl. ¶ 33.

Finally, Daniel Reiss offers the curious argument, as a stranger to the Beach's policy with Liberty Mutual, that where a fair reading of a contract leads one to understand there is no coverage and another to understand there is coverage, the contract is ambiguous and should be construed against the drafter and in favor of coverage. *Raska v. Farm Bureau*, 412 Mich. 355, 362 (1982). Although insurance contracts are generally considered contracts of adhesion and ambiguous terms are construed against the drafter under general contract principles, *id.* at 371-72, the Auto Policy language is not ambiguous or unfair in this case. An interpretation construing the language to broaden its scope is inappropriate, and would be taking the language out of the "reasonable expectations of the parties." *Id.* Furthermore, as discussed above, "bodily injury" has been found to mean "bodily injury to a person and sickness, disease or death which results from it," with the court in that case finding that this definition is unambiguous and understood as contemplating "actual physical harm or damage to a human body". *Descheemaeker*, *supra* (citing *Harris*, 161 Mich. App. at 89; *Hoag*, 136 Mich. App. at 334-35. Because the Minor Children were not in the

accident, nor were they near the accident as witnesses in the zone of danger, their resulting injuries are derivative of their father's injuries and Liberty Mutual's motion for summary judgment will be granted.

V

Daniel Reiss also argues that Liberty Mutual and its insureds did not object to the state court's scheduling order and participated in the case evaluation as ordered by the court. Daniel Reiss notes that he and the Minor Children had separate case evaluation awards and separate fees paid to the case evaluation panel. Daniel Reiss contends that if a *liability insurer* defends with knowledge of facts that would allow avoidance of liability to the insured, but does not provide reasonable notice of the possible disclaimer to the insured, a presumption of prejudice arises, making proof of actual prejudice unnecessary to apply estoppel to any coverage defenses. *Smit v. State Farm Mut. Auto. Ins. Co.*, 207 Mich. App. 674, 685 (1994). Waiver or estoppel may be applied to extend coverage to losses not within the terms of the policy if the inequity to the insurer that will result from broadening the policy coverage is outweighed by the inequity suffered by the insured. *Lee v. Evergreen Regency Coop.*, 151 Mich. App. 281, 286 (1986).

Liberty Mutual asserts that it has not waived its rights to rely upon the limits of liability in the Policy, and is not estopped from doing so. Liberty Mutual was not a party to either underlying state court lawsuit, and contends the assertion that its insureds should have objected to the case evaluation procedure on its behalf have no merit. The parties' papers do not reflect whether the Beaches were represented by counsel provided by Liberty Mutual. Moreover, under Michigan law, absent knowledge and participation by Liberty Mutual, the doctrines of waiver and estoppel cannot broaden the coverage offered by an insurance policy. *Kirschner v. Process Design Assoc., Inc.*, 459 Mich. 587, 594 (1999) (citing *Ruddock v. Detroit Life Ins. Co.*, 209 Mich. 638, 654 (1920))

(emphasis added). This is not a case where coverage is at issue, but rather contract interpretation of the stated limit of liability for bodily injury. *See Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 956 (7th Cir. 2004) (concluding that the doctrine of estoppel does not prevent an insurer from asserting that emotional distress claims are subject to an "each person" limit of liability applicable to another's bodily injuries). Additionally, the court in *Smit*, a case on which Daniel Reiss relies, concluded that the trial court erred in holding that estoppel or waiver precluded the insurance company from establishing that the loss at issue was excluded under the terms of the insurance policy. 207 Mich. App. at 685.

Daniel Reiss has not advanced any facts that would justify the applicability of the doctrines of waiver and estoppel and thus preclude Liberty Mutual from asserting that the Minor Children's claims in the Judith Reiss Lawsuit are subject to the "each person" limit of liability applicable to another's bodily injuries. As a result, Liberty Mutual's motion for summary judgment will be granted.

## VI

Accordingly, Plaintiff Liberty Mutual's motion for summary judgment [Dkt # 18] is **GRANTED**, and the Court **CONFIRMS** that Liberty Mutual's obligation to indemnify its insureds under the policy purchased by Charles Beach is limited to $100,000 for all damages, both direct and derivative, arising from Daniel Reiss' automobile/motorcycle accident.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: November 3, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 3, 2010.

                                          s/Tracy A. Jacobs
                                          TRACY A. JACOBS